IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAULA SMITH an individual and                3:15-CV-02356-BR
LESTER SMITH an individual,
                                             OPINION AND ORDER
        Plaintiffs,

v.

TARGET CORPORATION, a foreign
business corporation,

        Defendant.


RYAN M. LEE
7327 S.W. Barnes Road
#515
Portland, OR 97225
(503) 423-7519

        Attorney for Plaintiffs

WILLIAM H. STOCKTON
Brisbee & Stockton
139 N.E. Lincoln Street
P.O. Box 567
Hillsboro, OR 97124
(503) 648-6677

        Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Target Corporation's Motion (#13) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendant's Motion.

<u>BACKGROUND</u>

The following facts are taken from Plaintiffs' Complaint, Defendant's Concise Statement of Material Facts, and the parties' summary-judgment materials, and are undisputed unless otherwise noted.

Plaintiff Paula Smith and her daughter Taylor Smith entered the Defendant's store located at 10775 S.W. Beaverton Hillsdale Highway in Beaverton, Oregon, at approximately 4:45 p.m. on November 27, 2013.  The store was busy because it was the day before Thanksgiving.

While walking down one of the store's aisles, Paula Smith stepped on a small, hard object and fell.  Neither Paula Smith nor her daughter saw or could identify the object that Paula Smith stepped on.  Target employee Daniela Hopkins saw Paula Smith fall and came to her assistance immediately.  Hopkins called a "code green" on her store walkie-talkie and alerted store supervisors that a guest had been injured.  In less than one minute several supervisors arrived at Paula Smith's location. A supervisor called an ambulance, and other supervisors brought

2 - OPINION AND ORDER

Paula Smith water and a pillow.  One supervisor blocked off the aisle where Paula Smith was located so other store patrons could not walk through the area.  Target employees searched the aisle and floor, including underneath the base decks and in the corners, in an effort to locate the thing that Paula Smith slipped on, but they did not find anything.  Paramedics arrived at Paula Smith's location within ten minutes of Paula Smith's fall.  Ultimately Paula Smith was taken by ambulance to the hospital accompanied by her daughter.  Neither Paula Smith nor any members of her family returned to the Target store for four to six weeks after her fall.

On November 16, 2015, Paula Smith and her husband Lester Smith filed an action in Multnomah County Circuit Court against Target in which they allege state-law claims for negligence and loss of consortium.  Plaintiffs served Target with the Complaint on November 25, 2015.

On December 17, 2015, Defendant removed the matter to this Court on the basis of diversity jurisdiction.

On July 5, 2016, Defendant filed a Motion for Summary Judgment as to both of Plaintiffs' claims.  The Court took the matter under advisement on September 12, 2016.

## STANDARDS

Summary judgment is appropriate when "there is no genuine

3 - OPINION AND ORDER

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a

4 - OPINION AND ORDER

material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


**DISCUSSION**

Defendant moves for summary judgment on the ground that Plaintiffs have failed to establish Paula Smith's claim for negligence.

Under Oregon law

> an invitee who slips on a foreign substance in an occupant's store must prove that: (1) the substance was placed there by the occupant; (2) the occupant knew the substance was on the floor and failed to remove it; or (3) the substance had been on the floor for a sufficient amount of time, such that the occupant should have discovered and removed it.

*Laygui v. Wal-Mart Stores, Inc.*, No. 6:13-cv-00327-AA, 2014 WL
3695536, at *2 (D. Or. July 24, 2014)(citing *Van Den Bron v. Fred
Meyer, Inc.*, 86 Or. App. 329, 331 (1987)). Defendant asserts
Paula Smith has not established the item on which she slipped was
placed there by Defendant, that Defendant knew the item was on
the floor and failed to remove it, or that the item had been on
the floor for a sufficient amount of time that Defendant should
have discovered and removed it.

Defendant notes Paula Smith stated in a letter to
Defendant's insurance carrier, testified at deposition, and
alleged in her Complaint that she did not see the object that she
stepped on, she does not know what object she stepped on, and she
did not have any idea how long the object had been on the floor.
Specifically, in a letter to Defendant's insurance company Paula
Smith stated in pertinent part:

> Per our discussion this morning, I just wanted to
> reiterate that on Wednesday, November 27, 2013 I
> was shopping in the Target store at 10775 SW
> Beaverton Hillsdale Hwy in Beaverton, Oregon
> . . . . I stepped down on something with my right
> foot. It made me fall. I don't know what I
> stepped on. The sensation was hard and slick
> against the surface of the floor. Not wet.

Suppl. Decl. of William Stockton, Ex. 2 at 1. In their Complaint
Plaintiffs allege "Plaintiff PAULA SMITH stepped on a small hard
object. . . . The size of the object and the crowds prevented
Plaintiff PAULA SMITH from seeing it." Compl. at ¶ 5.
Similarly, at deposition Paula Smith testified:

6 - OPINION AND ORDER

I did step down on something with my right foot.
It did make me fall and it was hard.  It was
raised above the ground a little, you know, not
like a lot but an amount and it was very slick
against the surf ace of the floor and it was not
wet.

                           * * *

I am not 100 percent certain what I stepped on.
As I said, it was hard.  It was raised a little
bit.  It was a smallish thing.  The sensation is
very, very clear in my mind.

                           * * *

I didn't know what I stepped on.  I am not 100
percent sure what I stepped on, but I am very
certain about ·the sensation of what it was.

Decl. of William Stockton, Ex. A at 7-8.  Paula Smith also

testified:

        Q.   Did you ever see the object?

        A.   No.

        Q.   Did you ever see any object on the floor as
             you approached the area where you fell?

        A.   No.

        Q.   Did you ever see any object on the floor
             after you fell?

        A.   No.  Once I fell, I knew I was hurt very
             badly.

        Q.   And the object, whatever the object was, do
             you have any idea of how long it might have
             been on the floor because of some
             circumstance?

        A.   No.

        Q.   Do you have any idea of how it came to be on

7 - OPINION AND ORDER

the floor?

A.   No.

Stockton Decl., Ex. A at 9.

In addition, the record also reflects Defendant's employees did not find any object on the floor during their search of the area immediately after Paula Smith fell, Paula Smith's daughter did not see what Paula Smith slipped on, and no object has ever been identified as the one that caused Paula Smith to fall. Specifically, Taylor Smith noted:

> On November 27, 2013 I went to Target with my mother twice. . . .  We came back to Target [the second time] to get my prescription and a movie. My mother and I were walking next to each other down the aisle between the cards and the children's department.  Suddenly, she wasn't next to me.  I looked down and she was on the ground. I was shocked. . . .  I was so upset I couldn't even move. . . .  I do not know why she fell.  It happened so fast.  One second she was beside me and then she was on the floor.  I did not look to see if she may have stepped on something, or why she fell, because I was so worried about her.

Stockton Decl., Ex. C at 1.  It is, therefore, undisputed that Taylor Smith also did not see or discover the object that caused Paula Smith to fall.  Moreover, Target employee Daniela Corina Hopkins testified at deposition that she was "pretty close" to Paula Smith when she fell, she saw Paula Smith fall to the ground "quickly" and "immediately approached her," she immediately notified store supervisors that Paula Smith had fallen, and "less than a minute" after the notification supervisors began to

8 - OPINION AND ORDER

arrive.  Stockton Decl., Ex. B at 4-5.  Target employees blocked off the aisle and conducted a thorough search of the area, but they did not find anything that could have caused Paula Smith to slip and fall.

Paula Smith concedes neither she nor her daughter saw what Paula Smith slipped on.  Paula Smith, however, relies on her deposition testimony; her Declaration; and the Declaration of Mark Ososke, an investigator, to establish her negligence claim. In her deposition Paula Smith testified although she does not know what she stepped on, "[i]t would be in keeping with like something plastic or those . . . little hooks that they put on hats and things to put them on the display that are raised up a little bit that are plastic.  It was something hard like that but it was just so slick against the floor but it wasn't wet." Stockton Decl., Ex. A at 8.  Paula Smith's statement, however, is based on mere speculation because she testified unequivocally that she does not know what she slipped on.

Paula Smith also relies on her Declaration in which she testifies she "returned to the Target store . . . after my injury . . . in an effort to determine what I had slipped on . . . an object consistent with the sensation I clearly felt under my foot just before I fell."  Decl. of Paula Smith at ¶ 2.  She also states:

> I located plastic hat hangers used by Target to
> display hats for sale.  The hangers are plastic

> pieces that are attached to the hats.  I have
> observed the hats hung by these hangers near the
> area where I slipped and fell.
>
> I did not see the object I slipped on at the time
> I fell, but based upon my observation of the
> feeling of the object under my foot, looking and
> feeling the hat hangers later at Target, and their
> proximity to where I fell , I believe I slipped on
> one of Target's hat hangers.

Decl. of Paula Smith at ¶¶ 3-4.  Her testimony, however, does not

establish beyond mere speculation that the item on which she

slipped was a hat hanger placed on the floor by Defendant, that

Defendant knew the item was on the floor and failed to remove it,

or that the item had been on the floor for a sufficient amount of

time that Defendant should have discovered and removed it.  For

example, Paula Smith does not specify in her Declaration when she

returned to the Target store to conduct her investigation.  At

deposition, however, Paula Smith testified she did not return to

the Target store for "at least a month or six weeks" after her

fall, and none of her family members returned to the Target store

before that point.  Paula Smith's investigation, therefore, was

at least four to six weeks after her fall, which is too remote in

time from her fall to establish what item Plaintiff slipped on.

    In addition, as Defendant notes, although Paula Smith

testifies the item she slipped on felt like it was "in keeping

with" the hat hooks, she does not indicate she investigated or

attempted to distinguish the feel of numerous other objects that

could be "in keeping" with the feel of the object she slipped on

10 - OPINION AND ORDER

and that would not be unexpected in a crowded retail store the
evening before Thanksgiving such as coins, keys, buttons,
jewelry, or any number of other small, hard objects.

Finally, Paula Smith relies on the Declaration of her
investigator Mark Ososke. Ososke testifies he went to the Target
store on August 7 and 8, 2016, which is nearly three years after
Paula Smith's fall. Ososke testifies he observed approximately
65% of the aisles had debris such as price tags, "plastic
hangers, cardboard containers, merchandise, garbage and other
debris" on the floor. Decl. of Mark Ososke at ¶¶ 2-3. Ososke's
testimony, however, does not shed any light on the state of the
aisle where Paula Smith fell three years earlier. In particular,
Ososke's observations do not make it any more likely that the
item Paula Smith slipped on three years earlier was put there by
Defendant or had been on the floor long enough for Defendant's
employees to have noticed it and failed to remove it. Oregon
courts have made clear that "in the absence of proof from which a
jury can draw an inference of how long the substance was on the
floor, there is no basis to find defendant negligent." *Weiskopf
v. Safeway Stores, Inc.*, 271 Or. 630, 632 (1975) (collecting
cases). In addition, "there must be some evidence of how long
the offending material was on the floor" in order to establish
liability. *Dubry v. Safeway Stores, Inc.*, 70 Or. App. 183, 188
(1984). Moreover, to the extent that Ososke's testimony is meant

to establish how often Defendant maintained the area where Paula
Smith fell, it is well-established under Oregon law that "[t]he
regularity of maintenance to the area is irrelevant to
determining how long the substance was on the floor." *Cardenas
v. Wal-Mart Stores, Inc.*, No. 3:13-cv-01725-ST, 2014 WL 2949332,
at *4 (D. Or. June 27, 2014)(citing *Diller v. Safeway Stores,
Inc.*, 274 Or. 735, 738 (1976)).  When the evidence does not show
the "spill preexisted inspection, the evidence has no bearing on
whether it was reasonable for the inspecting employee to discover
the spill." *Id.*

     Courts have concluded in cases under similar circumstances
that the plaintiffs have not established negligence claims.  For
example, in *Laygui v. Wal-Mart Stores, Inc.*, the plaintiff was
shopping in one of the defendant's stores when she slipped and
fell.  No. 6:13-cv-00327-AA, 2014 WL 3695536, at *1 (D. Or.
July 24, 2014).  The plaintiff "did not recall seeing or stepping
in any foreign substance" in the defendant's store, but after her
fall an employee mentioned the plaintiff had "blue stuff" on her
shoe that "could have been detergent." *Id.*  The employee went to
the detergent aisle and "noticed a small amount of detergent on
the floor, underneath a shelf, with no foot indentation in it.
He proceeded to wipe the area clean." *Id.*  The plaintiff filed a
negligence claim against the defendant, who, in turn, moved for
summary judgment.  The court granted the defendant's motion

noting:

> [T]he record is inadequate to create a genuine
> issue of material fact. . . .  Plaintiff offered
> no direct evidence indicating that, at any point
> prior to her fall, defendant's employees actually
> knew that detergent, or any other substance, had
> been spilled on the floor.  Nor is there any
> direct evidence that plaintiff, in fact, slipped
> on a substance on the floor.  Moreover, plaintiff
> provided no evidence demonstrating there was an
> earlier spill that defendant cleaned up, poorly or
> otherwise.

*Id.*, at *2.  As to whether the object was on the floor for so

long that the defendant should have discovered it, the court

noted:

> Plaintiff . . . proffers no evidence concerning
> how long the detergent, or any other substance,
> had been on the floor prior to her fall.  Without
> evidence of when the spill occurred, it is equally
> as probable that the detergent leaked immediately
> before plaintiff's fall as it was that the spill
> occurred two hours prior.  *Weiskopf*, 271 Or. at
> 632.  Thus, there is no proof from which a jury
> could infer how long the detergent had been on the
> floor or whether a scheduled safety sweep could
> have or should have remedied the spill.

*Id.*, at *3.  The court noted the case before it was not like

those in which the plaintiff survived summary judgment "by making

reference to the nature of the substance which caused his fall,

to show that the substance had been on the floor for a

substantial period of time."  *Id.*  In other words, it was not a

situation in which it was clear that the object that caused the

fall had been on the floor for an extended period.  The court

ultimately concluded:

13 - OPINION AND ORDER

> [G]iven the record before it, a jury would be
> forced to speculate as to whether defendant's
> actions or inactions were the impetus of
> plaintiff's fall, as well as whether one of
> defendant's employees knew of an earlier spill and
> failed to properly clean it up.  Yet "Oregon
> courts do not permit liability findings rooted in
> [this type of] conjecture."

*Id.,* at \*3 (quoting *Feazle-Hurt v. Target Corp.*, No. 3:12-cv-00997-AC, 2013 WL 5797601, at \*4-5 (D. Or. Oct. 28, 2013)).

Paula Smith does not proffer any nonspeculative evidence as to what she slipped on or how long the unknown item had been on the floor before her fall.  "Speculation and guesswork are not permissible means by which a jury may find negligence." *Laygui*, 2014 WL 3695536, at \*3 (citing *Griffin v. K.E. McKay's Market of Coos Bay, Inc.*, 125 Or. App. 448, 450-52 (1993)).

On this record the Court concludes Paula Smith has not established a genuine dispute of material fact exists as to whether the item on which Paula Smith slipped was placed there by Defendant, that Defendant knew the item was on the floor and failed to remove it, or that the item had been on the floor for a sufficient amount.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Paula Smith's negligence claim.

The Court notes Lester Smith's claim for loss of consortium is "derivative of PAULA SMITH's claim for damages," and Lester Smith's claim arises solely from Paula Smith's claim for negligence.  Because the Court has granted summary judgment for

14 - OPINION AND ORDER

Defendant as to Paula Smith's negligence claim, the Court also grants summary judgment for Defendant as to Lester Smith's claim for loss of consortium.  The Court, therefore, dismisses this matter with prejudice in its entirety.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motion (#13) for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 11th day of October, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge